IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DENISE TYLER, o/b/o <br> JOHN F. TYLER, deceased, <br>            Plaintiff, <br> <br> v. <br> <br> MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br> <br>            Defendant. | Civil Action No. 3:09-02742-JRM <br><br> **ORDER** |

This case was originally filed on December 23, 2008 in the District of New Jersey by Plaintiff John F. Tyler ("Plaintiff").[1] On October 22, 2009, the action was transferred to the District of South Carolina. See Doc. 19. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying claims for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). By Order of Reference (Doc. 40) from the Honorable Cameron M. Currie, United States District Judge, pursuant to 28 U.S.C. § 636, Local Civil Rules 73.02(B) and 83.VII.02 DSC, and the consent of the parties, the case is before the undersigned Magistrate Judge for a final order.

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and SSI on September 27, 2004, alleging disability since May 27, 2004. Plaintiff's applications were denied initially and on reconsideration, and he requested

---

[1] After Plaintiff's death on August 3, 2009, Denise Tyler (Plaintiff's spouse) was substituted on his behalf. See 42 U.S.C. § 404(d)(1).



a hearing before an administrative law judge ("ALJ"). After a hearing held on August 10, 2007, the ALJ issued a decision on June 9, 2008, denying benefits. The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because, under the medical-vocational guidelines (also known as the "grids") promulgated by the Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was forty-four years old at the time of the ALJ's decision. He had a twelfth grade education, with past relevant work as a life skills instructor, landscaper, cook, housekeeper and warehouse worker. (Tr. 17). Plaintiff alleged disability due to ischemic heart disease and hypertension.

The ALJ found (Tr. 15-20):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since May 27, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et. seq.*, 416.920(b) and 416.971 *et. seq.*).

3. The claimant has the following severe impairment[s]: ischemic heart disease and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant had the following residual functional capacity: in an eight-hour workday, the claimant can sit about six hours, stand/walk at least two hours, and lift/carry twenty pounds occasionally and ten pounds frequently. In addition, he can only occasionally balance, kneel, crouch and crawl, and can never climb. Further, he should avoid concentrated exposure to wetness and



humidity, and even moderate exposure to environmental irritants such as fumes, odors, chemicals, gases and temperature extremes.

6. The claimant is unable to perform any of his past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 2, 1964 and was 40 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. The issue of transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from May 27, 2004, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

On October 24, 2008, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final decision of the Commissioner.

## STANDARD OF REVIEW

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any



substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## MEDICAL RECORD

Plaintiff was treated at the Jersey Shore University Medical Center ("JSUMC") for complaints of chest pain on May 29, 2004. Cardiac catheterization revealed two-vessel coronary artery disease with complete occlusion of the left anterior descending coronary artery. A stent was inserted into the occluded artery. On June 1, 2004, Dr. Hojun Yoo discharged Plaintiff with diagnoses of acute myocardial infarction, hypertension, asthma, and hyperlipidemia. Tr. 140-141, 151-153.

On June 18, 2004, Plaintiff was treated at JSUMC for chest pain. Dr. Ahmad Salloum noted that Plaintiff's stent implantation had resulted in good reperfusion, his electrocardiogram was significantly improved, and his cardiac enzymes were normal. Dr. Salloum noted that Plaintiff had been fairly active at home, had not been seen for follow-up, and was ambulating without any problems. Plaintiff was discharged the following day with a diagnosis of atypical chest pain. Tr. 161.

Plaintiff sought emergency treatment on October 6, 2004 for lower back pain. Examination revealed that Plaintiff had a regular heart rate and rhythm and good distal pulses. His EKG results were improved compared to his June 2004 results. Plaintiff was discharged the following day with a diagnosis of musculoskeletal back pain. Tr. 166-167.

Dr. Deepander Arora examined Plaintiff at the Commissioner's request on January 9, 2005. Plaintiff complained of tiredness, some lightheadedness, intermittent chest pain, and shortness of breath. Examination revealed that Plaintiff had normal reflexes and sensation, full strength in all extremities, high cholesterol, high blood pressure (180/100), and abnormal EKG results (demonstrating possible anterolateral and inferior ischemia). Dr. Arora diagnosed Plaintiff with coronary artery disease, hyperlipidemia, and uncontrolled hypertension. He advised Plaintiff to follow up with the cardiologist. Tr. 184-187.

Dr. James S. Paolina, a state agency physician, assessed Plaintiff's residual functional capacity ("RFC") on April 4, 2005. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour day; occasionally climb, kneel, crouch, and crawl; frequently balance and stoop; avoid concentrated exposure to wetness and humidity; and avoid even moderate exposure to extreme heat, extreme cold, fumes, odors, dusts, gases, and poor ventilation. Tr. 237-244. Dr. S. Schoen affirmed Dr. Paolino's assessment on December 30, 2005. Tr. 244.

Notes from the Family Health Center of the JSUMC on June 24, 2005 indicate that Plaintiff complained of chest pain on a daily basis with left-sided head tenderness. Tr. 287. A Persantine stress test was performed on July 15, 2005. The results were non-diagnostic due to baseline left ventricular hypertrophy and ST-T wave changes. Left ventricle ejection fraction was 38%. Tr. 230-231. Plaintiff underwent a nuclear stress test on August 16, 2005. EKG results were normal, Plaintiff had a normal blood pressure response, and he had good-to-excellent physiologic response to exercise. Tr. 191.



On October 17, 2005, Dr. Yoo reported that Plaintiff had chest discomfort, but no shortness of breath or other cardiovascular symptoms. He opined that Plaintiff's prognosis was good; Plaintiff could lift up to twenty pounds; and Plaintiff had no limitations with regard to standing, walking, or sitting. Dr. Yoo stated that Plaintiff had not been to his office since December 21, 2004, and was terminated from his practice on September 25, 2005. Tr. 224-229.

Plaintiff was admitted to JSUMC on November 16, 2005 for shortness of breath. Cardiac catheterization revealed 90 percent stenosis in the left anterior descending artery. Plaintiff underwent stent implantation which reduced the stenosis to zero percent. Tr. 255, 264-265.

On November 21, 2005, Plaintiff was treated at the Family Health Center for complaints of occasional chest pain without shortness of breath, palpitations, or dizziness. Examination revealed normal heart rate and rhythm and no edema in the lower extremities. Tr. 284.

Plaintiff underwent a cardiac stress test on December 1, 2005. Exercise capacity could not be fully assessed because the test was terminated due to marked hypertension. Tr. 251.

On December 7, 2005, Plaintiff complained of a two-day history of chest pain without shortness of breath, dizziness, or palpitations. Examination at the Family Health Center revealed no edema in the lower extremities and normal heart rate and rhythm. Tr. 279. He returned on December 21, 2005, at which time his blood pressure readings were 131/77 and 136/70. A physician wrote that Plaintiff's blood pressure was controlled with his current medications. Tr. 277.

On an unknown date, Dr. Yoo wrote that he was unable to complete an Examination Report for the State of New Jersey, Division of Family Development because Plaintiff had not returned for follow-up within six months of his last examination on December 21, 2004. Dr. Yoo stated that his nurse practitioner had filled out a portion of the form, and the form was signed by Diana Reid.

6



Nurse Practitioner Reid reported that Plaintiff could lift up to twenty-five pounds and had no limitations with regard to standing, walking, climbing, stooping, bending, or using his hands. She opined that he could not perform full-time work and had "Class II" cardiac disability.[2] Tr. 136-138, 350-352.

On April 3, 2006, Plaintiff was admitted to JSUMC with complaints of chest pain radiating to his left arm. Cardiac catheterization revealed an 85-90 percent occlusion of the left posterolateral branch of the left circumflex coronary artery. Plaintiff underwent stent implantation which reduced the occlusion to zero percent. He was discharged on April 7, 2006, with instructions to follow up with his cardiologist and enter cardiac rehabilitation. Tr. 245-249.

On May 17, 2006, Plaintiff complained of numbness in his right leg and a need to sit frequently since his catheterization in April 2006. Examination revealed that Plaintiff had full strength, normal sensation, normal pulses, and no edema in his lower extremities. Tr. 272.

Plaintiff underwent cardiac catheterization on May 31, 2006 to evaluate his complaints of chest pain. He was found to have 60 percent stenosis in the left anterior descending artery. Other coronary arteries were found to be patent. In the left ventricle, wall motion was normal, ejection fraction was estimated at 60 percent, and no mitral valve regurgitation was noted. Dr. Gregory Noto recommended that Plaintiff continue medical therapy. Tr. 310-311.

---

[2]This was defined on the form as:
Organic heart disease exists but without resulting symptoms at rest. Walking freely in the level, climbing at least one flight of stairs and the performance of the usual activities of daily living do not produce symptoms. Prolonged exertion, emotional stress, hurrying, hill-climbing, recreation or similar activities produce symptoms. Signs of congestive heart failure are not present.
Tr. 138, 352.

7



In an Examination Report to the State of New Jersey, Division of Family Development on June 22, 2006, Dr. Howard Katz (a cardiologist who began treating Plaintiff on May 28, 2006) opined that Plaintiff was unable to work full time from May 31 to June 30, 2006. He stated that Plaintiff had no limitations with regard to standing, walking, climbing, or lifting. He wrote that Plaintiff had "Class II" organic heart disease. Tr. 312-314; see Tr. 18.

On March 28, 2007, Plaintiff was treated at the VA Medical Center for a history of atypical chest wall pain. Tr. 335. He was prescribed medications, including an oral inhaler for obstructive asthma, on April 3, 2007. Tr. 333.

On April 8, 2007, Plaintiff was treated at Providence Hospital in Columbia, South Carolina for complaints of severe chest pain. Dr. Joseph Lawton, III diagnosed Plaintiff with acute anterior myocardial infarction. An angiogram revealed a 99-100 percent thrombotic occlusion in the left anterior descending coronary artery and Dr. Lawton implanted a stent. Plaintiff was also diagnosed with mildly impaired left ventricular function with an ejection fraction of 45 percent. Tr. 318-319, 341-342, 347-348.

On October 23, 2007, Plaintiff complained of chest pain at the Regional Medical Center in Orangeburg, South Carolina. Cardiac enzyme testing was positive. Based on this and his history of multiple stents, Plaintiff was transferred to Providence Hospital, where an angiogram revealed re-stenosis of his left anterior descending coronary artery. After stent implantation, Plaintiff had zero percent stenosis and good flow in the artery. A left ventriculogram showed an ejection fraction greater than 40 percent. Plaintiff was discharged on October 27, 2007, with diagnoses of coronary artery disease, hypertension, dyslipidemia, and mild renal insufficiency. Tr. 367, 371-375.



Plaintiff returned to the Regional Medical Center with complaints of chest pain on November 30, 2007. His cardiac enzymes were normal, and he denied shortness of breath, palpitations, or dizziness. Dr. Samuel V. King determined that medical treatment was the best course and he adjusted Plaintiff's medications. Tr. 385, 389. Stress testing on December 1, 2007 revealed no ischemic changes, an ejection fraction of 36 percent, and adequate response to exercise. Tr. 385-389, 394-395.

Dr. Ester R. Hare examined Plaintiff at the request of the Commissioner on March 18, 2008. Plaintiff complained of lightheadedness, dizziness, and occasional chest pain and discomfort. He reported that he last worked in 2007 as a landscaper, and it had been very difficult for him to work because of chest pain. Examination revealed regular heart rate and rhythm; normal gait; normal ability to perform fine and gross manipulation; full range of motion in Plaintiff's neck, back, and all extremities; and no gross neurological deficits. Dr. Hare opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for at least two hours in an eight-hour day; sit without limitation; never climb; occasionally balance, kneel, crouch, and crawl; and reach and handle without limitation. Tr. 396-402.

## **HEARING TESTIMONY**

Plaintiff stated that he last worked in 2004 as a landscaper and stopped working because he had a heart attack. He testified that he had been taking nitroglycerin for chest pain since age 22. Plaintiff said that he had not followed up with treatment for his cardiac problems because of a lack of funds and transportation. He stated that his current activities included preparing meals for his family, doing some house cleaning, taking a two-to-three hour nap in the afternoon, attending church, fishing, and using a computer. Tr. 420-423. Plaintiff reported that his heart condition was his only



significant problem. Tr. 423. He said that he still experienced chest pain and his medication made him drowsy. Tr. 426-427. Plaintiff estimated that he could lift twenty to thirty pounds, sit for fifteen minutes at a time, and stand for fifteen minutes at a time. Tr. 427. He said that he experienced dizziness and lightheadedness about every other day due to high blood pressure, and that climbing stairs caused him to become short of breath. Tr. 430-431.

## **DISCUSSION**

Counsel for Plaintiff asserts that the ALJ: (1) erred in finding that Plaintiff's non-exertional limitations did not significantly erode his occupational base; (2) improperly failed to consider and evaluate additional non-exertional limitations which Plaintiff experienced which would, if properly considered, further erode Plaintiff's occupational base, reduce Plaintiff's RFC, and reduce Plaintiff's ability to work eight hours per day, five days per week; (3) failed to properly evaluate Plaintiff's subjective complaints; and (4) failed to find that Plaintiff met or equaled the Listing of Impairments (the "Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1, at § 4.04(C)(1)(a) and/or § 4.04(C)(1)(e). The Commissioner contends that the decision that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence[3] and free of legal error.

A. Listings

---

[3]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).



Counsel for Plaintiff alleges that the ALJ erred by not finding that Plaintiff met or equaled Listing 4.04 (Ischemic Heart Disease) at (C)(1)(a) and/or (C)(1)(e). The Commissioner contends that substantial evidence supports the finding that Plaintiff's ischemic heart disease did not meet these Listings.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the claimant have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137, 146 and n. 5 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s) is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. § 404.1526(a). A claimant has to establish that there was a "twelve-month period...during which all of the criteria in the Listing of Impairments [were] met." DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds). An ALJ's failure to explicitly refer to a Listing by name does not, by itself, require remand, provided that the ALJ's decision is sufficient to permit the reviewing court to trace the ALJ's reasoning. See Rice v. Barnhart, 384 F.3d 363, 369-370 (7th Cir. 2004).

Listing 4.04 requires, in pertinent part:



> Ischemic heart disease, with symptoms due to myocardial ischemia, as described in 4.00E3-4.00E7, while on a regimen of prescribed treatment (see 4.00B3 if there is no regimen of prescribed treatment), with one of the following:
> *****
> C. Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
>> 1. Angiographic evidence showing:
>>
>>> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
>>> *****
>>> e. 70 percent or more narrowing of a bypass graft vessel; and
>>
>> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

Plaintiff fails to show that he met or equaled the Listing at (C)(1)(a) because his angiograms showed a normal left main coronary artery (Tr. 151, 248, 265, 374). As noted above, Listing 4.04 (C)(1)(a) requires angiographic evidence of a 50 percent or greater narrowing of a non-bypassed left main coronary artery. He fails to show that he met or equaled the Listing at (C)(1)(e) because it requires angiographic evidence of a 70 percent or greater narrowing of a bypass graft vessel and Plaintiff did not undergo bypass surgery. Additionally, Plaintiff has not show the required "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living."

B.  <u>Credibility</u>

Counsel for Plaintiff asserts that the ALJ erred in evaluating Plaintiff's credibility because the ALJ did not consider non-medical evidence in evaluating Plaintiff's credibility; relied



on medical evidence to discount Plaintiff's credibility; failed to consider Plaintiff's statements of pain and other non-exertional limitations such as chronic fatigue, shortness of breath, and the need to take naps on a daily basis; failed to analyze the side effects of Plaintiff's medications; relied on medical opinions to discount Plaintiff's credibility; and indicated at the hearing that he (the ALJ) did not think that Plaintiff's credibility was an issue. The Commissioner contends that the ALJ adequately evaluated Plaintiff's credibility, properly discounted Plaintiff's credibility, and reasonably found that the medical evidence did not support Plaintiff's allegations of total disability.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ correctly set out applicable Fourth Circuit law concerning the evaluation of a claimant's credibility. See Tr. 16-17. Review of the decision, however, indicates that the ALJ improperly discounted Plaintiff's credibility exclusively on the medical evidence (specifically, Dr.

13



Yoo's August 2004 statement, Dr. Katz's June 2006 statement, and Dr. Hare's March 2008 one-time evaluation). See Tr. 19. Further, the ALJ does not appear to have considered all of the medical evidence. Specifically, the ALJ does not appear to have considered medical records from Plaintiff's October 2007 myocardial infarction and subsequent cardiac catheterization and stent placement ( Tr. 354-355, 371-380) or his November 2007 hospitalization for chest pain in which it was noted that Plaintiff likely suffered anterior infarction (Tr. 388-389).

The ALJ also does not appear to have fully considered the side effects of Plaintiff's medications. Plaintiff testified that his medication made him sleepy, his medication made him nap two to three hours a day, and his prescribed Nitroglycerine made him lightheaded and caused headaches. Tr. 420, 422, 434. The Commissioner contends that the ALJ properly discounted Plaintiff's testimony that he experienced drowsiness and other medication side effects because Plaintiff did not complain of this to his treating or examining physicians. The ALJ, however, did not discuss Plaintiff's reported medication side effects in his decision.

At the hearing, the ALJ stated that he did not think that Plaintiff's credibility was an issue (Tr. 435 and 438), but then discounted Plaintiff's credibility in the decision. Also, the ALJ does not appear to have considered Plaintiff's long work history. Where a claimant has worked steadily for a number of years and where "[t]here is no evidence of malingering..." his credibility is enhanced. Lanning v. Heckler, 777 F.2d 1316 (8th Cir. 1985)(dictum); see also Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971); Nanny v. Mathews, 423 F. Supp. 548, 551 (E.D.Va. 1976).[4]

---

[4]The determination concerning Plaintiff's credibility may also affect the determination of Plaintiff's RFC. The ALJ also does not appear to have considered the side effects of Plaintiff's medications in determining Plaintiff's RFC. Further, the credibility determination and RFC determination may impact whether the ALJ may rely on the grids (or must obtain testimony from a
(continued...)

14



## CONCLUSION

The Commissioner's decision is not supported by substantial evidence.  The ALJ failed to properly evaluate Plaintiff's credibility and RFC in light of all of the medical and non-medical evidence and applicable law.  The Commissioner's decision is **reversed** pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and the case is **remanded** to the Commissioner for further administrative action as set out above.

**IT IS SO ORDERED.**

Joseph R. McCrorey
United States Magistrate Judge

October 5, 2010
Columbia, South Carolina

---

⁴(...continued)
vocational expert).  When a claimant: (1) suffers from a nonexertional impairment that restricts his ability to perform work of which he is exertionally capable, or (2) suffers an exertional impairment which restricts him from performing the full range of activity covered by a work category, the ALJ may not rely on the grids and must produce specific vocational evidence showing that the national economy offers employment opportunities to the claimant.  See Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989); Hammond v. Heckler, 765 F.2d 424, 425-26 (4th Cir. 1985); Cook v. Chater, 901 F. Supp. 971 (D.Md. 1995).  A nonexertional impairment is an impairment which is present whether the claimant is attempting to perform the physical requirements of the job or not.  See Gory v. Schweiker, 712 F.2d 929 (4th Cir. 1983); see also 20 C.F.R. § 404.1569a.  Every nonexertional condition does not, however, rise to the level of a nonexertional impairment.  The proper inquiry is whether there is substantial evidence to support the finding that the nonexertional condition affects an individual's residual capacity to perform work of which he is exertionally capable.  Walker, 889 F.2d at 49; Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1984).